UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DVEIL FREEMAN, JR., individually and on behalf of his deceased father, AND AMAYA FREEMAN, individually and on behalf of her deceased father, DVEIL FREEMAN, SR. | * | CIVIL DOCKET NUMBER |
| | * | SECT. |
| | * | MAG. |
| VERSUS | * | |
| JAMES W. LEBLANC IN HIS INDIVIDUAL CAPACITY; DONNIE BORDELON IN HIS INDIVIDUAL CAPACITY; JOSEPH BUTTROSS IN HIS INDIVIDUAL CAPACITY; DONALD JOHNSON, IN HS INDIVIDUAL CAPACITY; SCHWANDA HARVEY, IN HER INDIVIDUAL CAPACITY; JOE DIAZ, IN HIS INDIVIDUAL CAPACITY; JAMES WRIGHT, JR. IN HIS INDIVIDUAL CAPACITY; RONNAIE HUNT, IN HIS INIDIVIDUAL CAPACITY; A CORRECTIONAL OFFICER KNOWN AS "BIG G" IN HIS INDIVIDUAL CAPACITY; A CORRECTIONAL OFFICER KNOWN AS "MS. GREY" IN HER INDIVIDUAL CAPACITY; AND OTHER (NAMES CURRENTLY UNKNOWN) CORRECTIONAL OFFICERS AND NURSES AT ELAYN HUNT CORRECTIONAL | * | |

## COMPLAINT

Dveil Freeman, Jr. and Amaya Freeman, individually and on behalf of their deceased father, Dveil Freeman, Sr. (hereafter Mr. Freeman) a former prisoner of the Louisiana Department of Corrections and Public Safety ("DOC") who was housed at Elayn Hunt Correctional Center ("EHCC"), file this Complaint based on the defendants' deliberate indifference to Mr. Freeman's serious and obvious medical needs, namely, his drug overdose and subsequent death. The defendants' deliberate indifference violated Mr. Freeman's right to be free from cruel and unusual punishment under the Eighth Amendment to the U.S. Constitution. In support of these claims, Dveil Freeman, Jr. and Amaya Freeman, on behalf of their father, Dveil Freeman, Sr., show as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the claim for violation of the Fourteenth Amendment and 42 U.S.C. § 1983 pursuant to 28 U.S.C. §§ 1331 and 1343.
2. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1).

## PARTIES

### (Plaintiffs)

3. **Dveil Freeman, Jr.** is an adult citizen of the State of Louisiana and is currently domiciled in the Monroe, Louisiana area. He is a proper plaintiff for survival and wrongful death actions, as he is the son of Dveil Freeman, Sr. who died

leaving no spouse to survive him.

4. **Amaya Freeman** is an adult citizen of the State of Louisiana and is currently domiciled in the Baton Rouge, Louisiana area. She is the proper plaintiff for survival and wrongful death actions, as she is the daughter of Dveil Freeman, Sr. who died leaving no spouse to survive him.

**(Defendants)**

5. **James M. LeBlanc, ("LeBlanc")** is a person of full age of majority and a resident of the State of Louisiana. **LeBlanc** is sued in his individual capacity as the former Secretary of the Louisiana Department of Corrections and Public Safety. At all times described herein, **LeBlanc** was the ultimate policy-maker for the DOC, and was responsible for the hiring, training, supervision, discipline and control of appropriate staff to maintain the care, custody, and control of prisoners in the custody of the DOC. He was responsible for all staffing levels of EHCC. He was also responsible for the supervision, administration, policies, practices, customs, and operations of EHCC. He was a final policy maker, and at all pertinent times was acting under color of law. He is liable both directly and vicariously for the actions complained of herein.

6. **Donnie Bordelon ("Bordelon")**, is a person of the full age of majority and a resident of the State of Louisiana. **Bordelon** is sued in his individual capacity, as the former warden of EHCC, a facility owned and operated by the State of

Louisiana through the Department of Public Safety and Corrections. At all times described herein, **Bordelon** was the Warden of EHCC and, as such, was responsible for the hiring, training, supervision, discipline and control of appropriate staff to maintain the care, custody, and control of prisoners in his charge. He was also responsible for the supervision, administration, policies, practices, customs, and operations of EHCC. He was a final policy maker, and at all pertinent times was acting under color of law. He is liable both directly and vicariously for the actions complained of herein.

7. **Joseph Buttross ("Buttross")**, is a person of the full age of majority and a resident of the State of Louisiana. **Buttross** is sued in his individual capacity, as an Assistant Warden of EHCC, a facility owned and operated by the State of Louisiana through the Department of Public Safety and Corrections. At all times described herein, **Buttross** was the Duty Warden of EHCC and, as such, was responsible for the supervision, discipline and control of appropriate staff to maintain the care, custody, and control of prisoners in his charge. He is liable both directly and vicariously for the actions complained of herein.

8. **Donald Johnson ("Johnson"),** is a person of the full age of majority and a resident of the State of Louisiana. **Johnson** is sued in his individual capacity, as a Colonel of EHCC, a facility owned and operated by the State of Louisiana through the Department of Public Safety and Corrections. At all times described

herein, **Johnson** was a Colonel of EHCC and, as such, was responsible for the supervision and control of appropriate staff to maintain the care, custody, and control of prisoners in his charge. He is liable both directly and vicariously for the actions complained of herein.

9. **Schwanda Harvey ("Harvey"),** is a person of the full age of majority and a resident of the State of Louisiana. **Harvey** is sued in her individual capacity, as a Lieutenant Colonel of EHCC, a facility owned and operated by the State of Louisiana through the Department of Public Safety and Corrections. At all times described herein, **Harvey** was a Lieutenant Colonel of EHCC and, as such, was responsible for the supervision and control of appropriate staff to maintain the care, custody, and control of prisoners in her charge. She is liable both directly and vicariously for the actions complained of herein.

10. **Joe Diaz ("Diaz")**, is a person of the full age of majority and a resident of the State of Louisiana. **Diaz** is sued in his individual capacity, as a Captain of EHCC. At all times described herein, **Diaz** was in charge of supervising the inmates housed on Beaver 2, Tier A, and was responsible for supervising staff assigned to this unit to maintain proper care and custody of inmates. He is directly and vicariously liable for the actions complained of herein.

11. **James Wright ("Wright"),** is a person of the full age of majority and a resident of the State of Louisiana. **Wright** is sued in his individual capacity, as a Major

employed at EHCC. At all times complained of herein, **Wright** was responsible for supervising staff and/or inmates housed on Beaver 2, Tier A. He is directly and vicariously liable for the actions complained of herein.

12. **Ronnaie Hunt ("Hunt"),** is a person of the full age of majority and a resident of the State of Louisiana. **Hunt** is sued in his individual capacity, as a Sergeant employed at EHCC. At all times complained of herein, **Hunt** was responsible for supervising the inmates housed on Beaver 2, Tier A. He is directly liable for the actions complained of herein.

13. **A Correctional Officer Known as "Big G"**, is a person of full age and majority and a resident of Louisiana, who was assigned to supervise the inmates housed on Beaver 2, Tier A. **Big G** is sued in his individual capacity as a correctional officer at EHCC. At all times complained of herein, **Big G**, was employed by EHCC as a correctional officer and was deliberately indifferent to an obvious and serious medical need of Dveil Freeman, Sr. **Big G**'s deliberate indifference resulted in the wrongful death of Dveil Freeman, Sr.

14. **A Correctional Officer Known as "Ms. Grey"**, is a person of full age and majority and a resident of Louisiana, who was assigned to supervise the inmates housed on Beaver 2, Tier A. **Ms. Grey** is sued in her individual capacity as a correctional officer at EHCC. At all times complained of herein, **Ms. Grey,** was employed by EHCC as a correctional officer and was deliberately indifferent to

an obvious and serious medical need of Dveil Freeman, Sr. **Ms. Grey's** deliberate indifference resulted in the wrongful death of Dveil Freeman, Sr.

15. **Other (Names Currently Unknown) Correctional Officers at EHCC**, are persons of the full age of majority and employees of the State of Louisiana. They are sued in their individual capacities as correctional officers at EHCC. At all pertinent times, these **Other Officers** acted with deliberate indifference to an obvious and serious medical need of Dveil Freeman, Sr. Their respective deliberate indifference, individually and cumulatively, directly caused Mr. Freeman's wrongful death.

**FACTUAL ALLEGATIONS**

16. Mr. Freeman was at all pertinent times herein a prisoner in the custody of the defendants and was housed at Elayn Hunt Correctional Center in St. Gabriel, Louisiana.

17. On June 29, 2023, a judge in the Fourth Judicial District Court for Ouachita Parish vacated Mr. Freeman's convictions and ordered a new trial, pursuant to an application for post-conviction relief. The court also ordered that Mr. Freeman be released on bail pending his retrial. *State v. Freeman,* 4th JDC Docket No. 10-F0808.

18. The District Attorney took an emergency writ on the trial court's grant of bail

and on July 17, 2023, the Louisiana Second Circuit Court of Appeal granted the State's writ and ordered that Mr. Freeman be held without bail. *State v. Freeman,* 23-KW-55431 (La. App. 2 Cir. 7/17/23).

19. The District Attorney also took a writ on the trial court's ruling on the merits of the post-conviction application and on July 27, 2023, the Louisiana Second Circuit granted the State's Writ and reversed the trial court's ruling on Mr. Freeman's post-conviction application. *State v. Freeman,* 23-KW-55463 (La. App. 2 Cir. 7/27/23).

20. Mr. Freeman sought supervisory review to the Louisiana Supreme Court, which granted his writ on June 5, 2024, and ordered full briefing and oral argument. *State v. Freeman,* 23-KP-1418 (La. 6/5/24).

21. As evident from investigative reporting, in 2024, while Defendant **Bordelon** was the Warden of EHCC, approximately seven inmates died from drug overdoses or suspicious circumstances. Defendant **Bordelon** was ultimately suspended from his position in September of 2024. Defendant **Bordelon**'s failure to stop the influx of drugs into EHCC and failure to ensure that the staff of EHCC recognize potential drug overdoses and respond accordingly is a direct cause of Mr. Freeman's wrongful death.

22. On or about June 19, 2024, Mr. Freeman was placed in administrative lockdown

in Beaver Two, A-Tier, Cell #5. According to a sworn statement from inmate James Waffer, Mr. Freeman informed him that a confidential informant had attempted to purchase methamphetamine from him earlier that day, setting him up for a drug raid.

23. Before any drug transaction occurred, Mr. Freeman was approached by Defendant **Other Officer(s)** who directed him to take a walk. During this time, Mr. Freeman had approximately seven grams of methamphetamine in his hand and unsuccessfully attempted to pass the drugs to other inmates.

24. Mr. Freeman was escorted by Defendant **Other Officer(s),** who reportedly instructed Mr. Freeman to "Give it here." In response, Mr. Freeman turned his head and swallowed approximately seven grams of methamphetamine in view of Defendant **Other Officer(s).**

25. Defendant **Other Officer(s)** reportedly placed Mr. Freeman on a body scanner. Despite having just witnessed Mr. Freeman swallow a lethal quantity of methamphetamine, Defendant **Other Officer(s)** ignored DOC/EHCC policy and did not send Mr. Freeman to the infirmary or hospital to prevent a potential overdose from the drugs Mr. Freeman had just consumed.

26. Fully aware of the serious and obvious medical risk that Mr. Freeman would face from not being treated, Defendant **Other Officer(s)** intentionally ignored DOC/EHCC policy and intentionally ordered him placed in a disciplinary

lockdown cell. Defendant **Other Officer(s)** intentionally did not request medical care for Mr. Freeman. Defendant **Other Officer(s)'s** deliberate indifference to the necessary medical treatment that Mr. Freeman obviously needed was a direct cause in his unnecessary pain and suffering, and eventual death.

27. Defendant **Other Officer(s)** placed Mr. Freeman in Beaver Two, A-Tier, Cell #5, a two-man disciplinary lockdown cell, which he shared during all relevant times with inmate James Waffer.

28. While in lockdown, Defendant **Other Officer(s)** conducted regular rounds and safety checks on Mr. Freeman and his other tier mates.

29. Over the following three to four days, Mr. Freeman's condition deteriorated and he exhibited extreme physical distress including profuse sweating, hallucinations, foaming at the mouth, repeated attempts to induce vomiting, and an inability to eat or drink.

30. Mr. Waffer reported that he notified correctional staff on multiple occasions that Mr. Freeman required emergency medical attention. Specifically, Mr. Waffer told Defendant **Big G** and Defendant **Ms. Grey** that they needed to send the nurse, but a nurse never came to check on Mr. Freeman.

31. Despite repeated pleas for assistance, including at least three or four requests to Defendant **Big G**, no medical personnel were called, and Mr. Freeman remained

in lockdown. Defendant **Big G** and Defendant **Ms. Grey** reportedly acknowledged the complaints but failed to act.

32. Mr. Freeman himself attempted to alert staff by standing at the bars of his cell, screaming that he needed to go to the infirmary. His visible medical distress was disregarded.

33. Despite the clear and obvious signs of Mr. Freeman's ongoing medical emergency Defendants **Big G**, **Ms. Grey**, and **Other Officer(s)** left him in his cell and intentionally made no effort to obtain the medical care that he obviously needed.

34. The actions and inactions of Defendants **Big G**, **Ms. Grey**, and **Other Officer(s)** violated DOC/EHCC policy. Their individual and cumulative failures constituted a deliberate indifference to Mr. Freeman's clear and obvious medical need. Their deliberate indifference was a direct cause in his unnecessary pain and suffering and eventual death.

35. Defendants **Big G**, **Ms. Grey**, and **Other Officer(s)'s** failure to seek the necessary medical treatment is consistent with a DOC/EHCC pattern and practice that punishes suspected drug users rather than seeking appropriate and life-saving medical care.

36. Despite clearly knowing that Mr. Freeman had ingested drugs, Defendant **Other Officer(s)** did not notify any medical professional about the situation. In turn,

no medical professional performed any evaluation of Mr. Freeman before or after he was placed in disciplinary lockdown.

37. Defendant **Other Officer(s)'s** intentional use of disciplinary lockdown prior to providing Mr. Freeman medical care under such circumstances amounts to deliberate indifference towards his serious medical need. Their individual and collective violation of Mr. Freeman's constitutional rights directly resulted in his overdose, physical, emotional, and mental pain and suffering, and eventual death.

38. Because of the obviousness of Mr. Freeman's medical crisis, Defendants **Big G, Ms. Grey,** and **Other Officer(s)** should have obtained immediate medical care for Mr. Freeman. Their intentional failure to do so is a direct cause of Mr. Freeman's wrongful death.

39. From January of 2024 through September of 2024, the deliberate indifference exhibited by Defendants **Leblanc** and **Bordelon** to the daily supervision and care of the inmates at EHCC resulted in approximately seven suspected overdose deaths, including Mr. Freeman.

40. At 3:07 a.m. on June 23, 2024, Defendant **Hunt** observed Mr. Freeman to be nonresponsive, with blood on his mattress.

41. Defendant **Hunt** notified Defendant **Diaz** that Mr. Freeman was unresponsive and had blood on his mattress.

42. Defendant **Diaz** authored a report in which he claimed to have entered the cell and administered two doses of "Narcan" to Mr. Freeman, who remained unresponsive.

43. Defendant **Diaz** alleges in his report that moments later Defendant **Wright** arrived and the two placed Mr. Freeman on a stretcher and began administering chest compressions.

44. Defendants **Wright** and **Diaz** notified Defendants **Buttross, Harvey,** and **Johnson** of the situation.

45. Following Mr. Freeman's death, Mr. Waffer reports that he was brought to speak with an unnamed Colonel, who claimed that Mr. Freeman's death was "not on us" and claimed the body scan did not detect drugs.

46. According to the autopsy report conducted by forensic pathologist Dr. J. Smith on June 25, 2024, Mr. Freeman died on June 23, 2024. The cause of death was determined to be methamphetamine intoxication. Toxicology testing revealed a femoral blood concentration of 3,600 ng/mL of methamphetamine, consistent with a lethal overdose.

47. The actions and inactions of defendants as described amount to the deliberate indifference to Mr. Freeman's serious medical need.

48. The individual and cumulative actions and inactions by the defendants named and described herein caused Mr. Freeman to suffer extreme physical, emotional

pain and suffering as he overdosed in a disciplinary lockdown cell where he eventually died.

49. The individual and cumulative negligent actions and inactions by the defendants named herein caused Mr. Freeman's wrongful death.

50. The defendants are therefore liable for damages to Mr. Freeman for his severe physical, mental, and emotional pain, suffering and anguish; and lost earnings.

51. At all times mentioned herein, all the defendants named in their individual capacities were employed by the State of Louisiana and acted under the color of law.

52. All the defendants are liable to Mr. Freeman for compensatory and punitive damages.

53. All the defendants are liable jointly, severally, and in solido for Mr. Freeman's injuries and death.

54. Mr. Freeman's cause of action survives and is now brought as a survival action by his heirs, the Complainants, **DVEIL FREEMAN, JR.**, and **AMAYA FREEMAN,** as successors to his cause of action.

55. As a result of the wrongful death of Mr. Freeman, his heirs, Complainants **DVEIL FREEMAN, JR.,** and **AMAYA FREEMAN,** sustained the following damages and/or losses:

a. Mr. Freeman's funeral expenses;

b. Loss of present and future duty, service, and support;

c. Loss of present and future love and affection;

d. Loss of present and future consortium;

e. Loss of financial support, future earnings, future maintenance, and shelter;

f. Mental pain and suffering;

f. Loss of enjoyment of life; and

g. Any and all other damages that may be proven at the trial on the merits hereof.

## CAUSES OF ACTION

## COUNT 1:

### § 1983 Violation Based on Establishment of a System in which Inmates with Serious Medical Issues are Denied Access to Appropriate Medical Care — Defendants LeBlanc and Bordelon (Individual Capacities)

56. The defendants named in this Count, acting individually and together, under color of law, acted to violate Mr. Freeman's right to be free from cruel and unusual punishment and the right to due process and equal protection of the laws as protected by the Eighth and Fourteenth Amendments of the United States Constitution and 42 USC § 1983. They did so by establishing and maintaining a system that they knew would result in inmates with serious medical conditions, namely, drug overdose, being placed in a location (EHCC extended disciplinary lock-down) where they would be deprived of treatment for those serious

medical emergencies. Mr. Freeman and the plaintiffs were individually harmed by this system because it resulted in the death of Dveil Freeman, Sr., who was deprived of appropriate medical treatment, which deprivation resulted in his death, as described above. At all pertinent times, the defendants named in this Count, individually and collectively, acted unreasonably, recklessly, and with deliberate indifference and disregard for the safety, constitutional, and civil rights of the plaintiff by establishing the above-described system.

**COUNT 2:**

**§ 1983 Violation Based on Failure to Supervise Other Defendants to Ensure Prisoners Received Appropriate Care for Serious Medical Needs – Defendants Bordelon, Buttross, Harvey, Johnson, Diaz, and Wright (Individual Capacity)**

57. Defendants **Bordelon, Buttross**, **Harvey, Johnson, Diaz,** and **Wright,** in their individual capacities, failed to supervise their subordinates, namely Defendants **Big G, Ms. Grey, and Other Officer(s)**, to ensure that these subordinates did not ignore inmates' requests and needs for medical treatment, including the need for proper treatment after the ingestion of a large amount of illegal drugs, and/or of providing unreasonable and patently insufficient treatment for inmates' conditions, and/or failing to properly monitor inmates' who are treated, causing serious pain, suffering, injury, and death. The plaintiffs were directly harmed by this failure to supervise because it caused the death of their father, Dveil Freeman, Sr. who was left untreated during a medical emergency. At all

pertinent times herein, Defendants **Bordelon, Buttross**, **Harvey, Johnson, Diaz,** and **Wright**, were aware of the need to supervise their subordinates in order to ensure that said subordinates did not violate inmates' rights, and Defendants **Bordelon, Buttross**, **Harvey, Johnson, Diaz,** and **Wright** ignored that need and acted unreasonably and with deliberate indifference and disregard for the safety of the plaintiffs' father Dveil Freeman, as described above.

**COUNT 3:**

**§ 1983 Violation Based on Deliberate Indifference to Dveil Freeman's Constitutional Right to Appropriate Medical Care — Defendants Big G, Ms. Grey, and Other Officer(s) (Individual Capacities)**

58. Defendants **Big G, Ms. Grey**, and **Other Officer(s)** (Individual Capacities), acting individually and together, and under color of law, engaged in a course of conduct that acted to deprive Mr. Freeman of his constitutional rights and did deprive him of said rights, specifically, the right to reasonable and adequate medical care, the right to be free from cruel and unusual punishment, the right to be free from unreasonable searches and seizures, and the right to due process and equal protection of the laws as protected by the First, Fourth, Eighth, and Fourteenth Amendments and Article IV (Privileges and Immunities Clause) of the United States Constitution and 42 U.S.C. § 1983. At all times pertinent herein, these defendants, acting individually and collectively, acted unreasonably, recklessly, maliciously, and/or with deliberate indifference and

disregard for the constitutional and civil rights and life and serious medical needs of the deceased, Dveil Freeman. Furthermore, these defendants, individually and collectively, had the duty and ability to intervene to prevent the violations of the rights of Mr. Freeman, as described herein, but failed to do so.

## DAMAGES

59. As a result of the actions of the defendants as described above, damages have been incurred as follows:

A. Dveil Freeman (deceased) suffered conscious and severe physical, mental, and emotional distress, pain and suffering prior to his death, and lost his life.

B. Dveil Freeman, Jr., and Amaya Freeman, suffered emotional pain and suffering, past, present, and future; loss of support; and have continued to suffer from the loss of love, affection, and companionship of their father, Dveil Freeman, and has incurred funeral and burial expense

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that after due proceedings there be judgment rendered in their favor and against all defendants individually and jointly, as follows:

1. Compensatory and punitive damages.

2. Funeral and burial costs and other special damages.

3. Plaintiffs are awarded reasonable attorneys' fees and all costs of these proceedings pursuant to 42 U.S.C. § 1988.

4. That judicial interest be awarded from the date of judicial demand.

5. That this matter be tried by a jury.

Respectfully submitted,

/s/ Jane Hogan
Jane Hogan, La. Bar No. 35172
Hogan Attorneys
310 North Cherry Street
Hammond, Louisiana 70401
Telephone: 985-542-7730
Facsimile: 985-510-2709
E-Mail: jane@hoganattorneys.com

*Attorney for Dveil Freeman, Jr. and Amaya Freeman*